UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

FRED E. WHITE, JR.                         CIVIL ACTION NO. 10-cv-0010

VERSUS                                     JUDGE HICKS

AMERICAN EDUCATION SERVICES/               MAGISTRATE JUDGE HORNSBY
PHEAA, ET AL

## MEMORANDUM RULING

**Introduction**

      Fred E. White, Jr. ("Plaintiff") obtained a student loan to assist his son with college expenses.  Plaintiff filed suit in state court against American Education Services and Education Services Foundation, two companies associated with the administration of the loan. He alleges that they are responsible for incorrectly placing negative information on Plaintiff's credit record.

      Defendants removed the case based on an assertion of diversity jurisdiction.  Plaintiff has filed a Motion to Remand (Doc. 21) that challenges the Defendants' assertion that the amount in controversy element of diversity jurisdiction is present.  For the reasons that follow, the Motion to Remand will be denied.

**Amount in Controversy; Burden on Defendants**

      Tort plaintiffs who file suit in Louisiana state courts may not specify the numerical value of their damage claim. La. Code Civ. P. art. 893. Plaintiff's petition, in compliance with that rule, did not state the amount of damages sought by Plaintiff. If a defendant

removes such a case based on an assertion of diversity jurisdiction, the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. The defendant may make this showing by: (1) demonstrating that it is "facially apparent" that the claims are likely above $75,000, or (2) setting forth the facts in controversy – in the notice of removal or an affidavit – that support a finding of the requisite amount. Luckett v. Delta Airlines, 171 F.3d 295, 298 (5th Cir. 1999); Simon v. Wal-Mart Stores, Inc., 193 F.3d 848 (5th Cir. 1999).

**Analysis**

Defendants, in their notice of removal, noted the silence of the petition with regard to the amount at stake, but they nonetheless asserted that the allegations in the petition support their contention that diversity jurisdiction exists.  Accordingly, the petition must be examined.  Plaintiff alleged that he "owns and operates a large construction company which operation requires the utilization of substantial lines of credit."  Petition, ¶ 13.  His credit history and credit score are extremely important with regard to the availability and cost of credit.  ¶ 14.  His credit score "also impacts costs for related matters such as insurance and obtaining credit accounts with vendors for materials and supplies."  ¶ 15. Defendants reported that Plaintiff made a late payment of $102.35, but that is not correct. ¶ 12. That negative credit information is the only negative information on Plaintiff's record.  ¶ 16. Plaintiff alleges that his attempts to convince Defendants to correct the mistake have been to no avail and have resulted in "additional unauthorized access to his credit information and

the additional negative consequences derived therefrom." ¶¶ 17-18.  The prayer of the petition asks for an order that the negative information be removed from Plaintiff's credit history and that Plaintiff be awarded unspecified amounts of damages and attorney fees. Plaintiff's petition does not invoke any federal law.

The first issue is the prayer for attorney fees. When a contract or statute at issue in a case contains a provision for the potential award of attorney fees, such fees may be included in the amount in controversy.  Grant v. Chevron Phillips Chemical Co., 309 F.3d 864, 874 (5th Cir. 2002).  Plaintiff candidly admits in his reply memorandum that he is unable to locate any statutory or contractual basis for his prayer for fees, and Defendants have not pointed to any lawful basis for a fee award.  Accordingly, the wholly unsupported prayer for attorney fees contributes zero toward the amount in controversy.

As for compensatory damages, one may only speculate from the facts in the petition as to the amount that might be at stake.  All that is known is that Plaintiff operates a "large construction company" that requires "substantial lines of credit" and that his credit score is extremely important to his business.  The court has noted before that adjectives such as serious or severe are not alone enough to elevate an injury claim to one over which the court may exercise diversity jurisdiction. Lilly v. Big E Drilling Co., 2007 WL 2407254, *3 (W.D. La. 2007). The same is true with respect to the terms "large" and "substantial" in this case. And Plaintiff never specifically alleges in his petition that he has been denied a loan or had an interest rate increase because of the information.  The petition at best implies such

damages might have arisen.  The most specific the petition is with respect to damages is a reference to unspecified "negative consequences."

There are two other bits of relevant information. The first is Plaintiff's prayer for a jury trial, for which state law requires at least $50,000 in controversy.  That request is of some relevance to the amount in controversy, although it does not mean that the amount necessarily exceeds $75,000. See Nelson v. Wal-Mart Stores, Inc. 2009 WL 1098905 (W.D. La. 2009) (collecting cases that address the effect of state-court jury demand).  On a related note, Plaintiff did not take advantage of the provision of Louisiana law that permitted him to allege in his petition that the amount in controversy was less than required for jurisdiction of the federal courts, but his failure to do so does not satisfy the removing Defendants' burden on the issue. Lilly v. Big E Drilling Co., 2007 WL 2407254, *2.

The second source of relevant information is Plaintiff's affidavit, filed with his motion to remand, in which he calculates his damages through the filing of his state court petition. Such a post-removal affidavit may be considered if the basis for jurisdiction is ambiguous at the time of removal.  Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000). There is such ambiguity in this case. The petition uses adjectives that suggest there is perhaps a significant amount of damages at issue, but the specific facts are lacking to find it more likely than not that $75,000 is in controversy. Accordingly, the affidavit may be considered.

Plaintiff testifies that he has calculated his increased costs and interest rates, through the November 30, 2009 filing date of his petition, that resulted from Defendants' refusal to

remove the incorrect credit information from his record.  Plaintiff lists his various loans, specifies the increase in his interest rate, and calculates that his losses through filing were $65,625.  Defendants do not challenge Plaintiff's calculations.

The jurisdictional facts that support removal must be judged at the time of the removal rather than when the petition was filed.  <u>Allen v. R & H Oil & Gas Co.</u>, 63 F.3d 1326, 1335 (5th Cir. 1995).  If Plaintiff's math is carried forward for another month until the date of removal, it adds about $1,600, for a claim of about $67,225 at the date of removal.  Plaintiff also states in his affidavit that "as of the date" he filed suit, the damages he sought did not exceed $75,000.  Such a post-removal stipulation does not defeat diversity jurisdiction.  It also does not preclude seeking damages in this suit that are incurred after the date the petition was filed.  The court looks to the facts at the time of removal to determine the amount in controversy, but it does not cut off consideration of damages that may flow from those facts after that date.

Courts routinely consider future damages such as medical expenses, lost wages, pain and suffering, and (when appropriate) attorney fees that may be reasonably predicted based on the facts that exist at the time of removal.  <u>See</u>, <u>e.g.</u>, <u>House v. AGCO Corporation</u>, 2005 WL 3440834, *1 (W.D. La. 2005) (projecting reasonable attorney fees for amount in controversy purposes). Plaintiff tells us that he will continue to accrue additional interest charges at a rate that, by this writing, will have brought his total such damages to an amount that exceeds $75,000.  There were also allegations in the petition, though not mentioned in

Plaintiff's affidavit, that Plaintiff's decreased credit score has also impacted matters such as insurance and obtaining credit accounts with vendors for materials and supplies.  Those allegations, presumably made in good faith, add another component of potential recovery to consider in assessing the amount in controversy.

Thus, the relevant facts are those taken from the petition, together with Plaintiff's clarifying affidavit that his estimate of his interest-related damages at the time he filed suit exceeded $65,000, plus the indication that those damages will continue to accrue at a rate of about $1,600 per month until the issue is resolved.  It is the undersigned's opinion that, viewing the case at the moment of removal and given those facts, it is more likely than not that the amount in controversy in the case exceeds $75,000.  Just as the value of physical injuries described in a petition are difficult to assess with great precision, it is impossible to say even in this financial case what the exact amount in controversy is, but the undersigned is comfortable that the amount exceeds the jurisdictional amount.  Accordingly, the **Motion to Remand (Doc. 21)** is **denied**.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of June, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE